**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| A.G., | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | |
| | * | Civil No. 25-2326-BAH |
| NORTH AMERICAN DIVISION OF | | |
| SEVENTH-DAY ADVENTISTS ET AL., | * | |
| | | |
| Defendants. | * | |

|  |  |  |
|---|---|---|
| | * | |
| A.T., | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | |
| | * | Civil No. 25-2451-BAH |
| NORTH AMERICAN DIVISION OF | | |
| SEVENTH-DAY ADVENTISTS ET AL., | * | |
| | | |
| Defendants. | * | |

|  |  |  |
|---|---|---|
| | * | |
| C.L., | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | |
| | * | Civil No. 25-2328-BAH |
| NORTH AMERICAN DIVISION OF | | |
| SEVENTH-DAY ADVENTISTS ET AL., | * | |
| | | |
| Defendants. | * | |

|  |  |  |
|---|---|---|
| | * | |
| D.S., | | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | |
| | * | Civil No. 25-2452-BAH |

NORTH AMERICAN DIVISION OF
SEVENTH-DAY ADVENTISTS ET AL.,          *

      Defendants.                          *

---

                               *

I.H.,

                               *

      Plaintiff,

                               *

v.

                               *          Civil No. 25-2450-BAH

NORTH AMERICAN DIVISION OF
SEVENTH-DAY ADVENTISTS ET AL.,          *

      Defendants.                          *

---

                               *

J.K.,

                               *

      Plaintiff,

                               *

v.

                               *          Civil No. 25-2325-BAH

NORTH AMERICAN DIVISION OF
SEVENTH-DAY ADVENTISTS ET AL.,          *

      Defendants.                          *

---

                               *

J.P.,

                               *

      Plaintiff,

                               *

v.

                               *          Civil No. 25-2453-BAH

NORTH AMERICAN DIVISION OF
SEVENTH-DAY ADVENTISTS ET AL.,          *

      Defendants.                          *

---

                               *

K.D.,

                               *

      Plaintiff,

                               *

2

v.

      *      Civil No. 25-2456-BAH

NORTH AMERICAN DIVISION OF
SEVENTH-DAY ADVENTISTS ET AL.,    *

    Defendants.      *

---

      *

S.E.,

      *

    Plaintiff,

      *

v.

      *      Civil No. 25-2458-BAH

NORTH AMERICAN DIVISION OF
SEVENTH-DAY ADVENTISTS ET AL.,    *

    Defendants.      *

---

      *

S.M.,

      *

    Plaintiff,

      *

v.

      *      Civil No. 25-2455-BAH

NORTH AMERICAN DIVISION OF
SEVENTH-DAY ADVENTISTS ET AL.,    *

    Defendants.      *

---

      *

T.P.,

      *

    Plaintiff,

      *

v.

      *      Civil No. 25-2457-BAH

NORTH AMERICAN DIVISION OF
SEVENTH-DAY ADVENTISTS ET AL.,    *

    Defendants.      *

---

|  | * |  |
|---|---|---|
| T.R., | * |  |
| Plaintiff, | * |  |
| v. | * | Civil No. 25-2329-BAH |
| NORTH AMERICAN DIVISION OF | * |  |
| SEVENTH-DAY ADVENTISTS ET AL., | * |  |
| Defendants. | * |  |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Plaintiffs A.G., A.T., C.L., D.S., I.H., J.K., J.P., K.D., S.E., S.M., T.P., and T.R. (collectively, "Plaintiffs") each filed individual lawsuits in the Circuit Court for Howard County against North American Division of Seventh-Day Adventists, Columbia Union Conference of Seventh-Day Adventist, Columbia Union Conference Association of Seventh Day Adventists, Inc. (together, the "Seventh-Day Defendants"), and Mountain View Conference Association of Seventh-Day Adventists ("Mountain View") (collectively, "Defendants"). *See* ECF 2 (state court complaint), in *A.G. v. North Am. Div. of Seventh-Day Adventists et al.*, Civ. No. BAH-25-2326.[1] Plaintiffs each bring five tort claims arising out of alleged physical and sexual abuse and neglect perpetrated at Miracle Meadows School ("Miracle Meadows") in West Virginia when Plaintiffs were minors. *Id.* at 13–22.[2]

---

[1] The Court has reviewed all filings in each case. Each complaint is similar, except for Plaintiffs' individual allegations of sexual and physical abuse, and the arguments in the pending motions, responses, and replies thereto, are identical. For convenience, the Court cites to the ECF filings in A.G.'s case throughout this memorandum opinion. *See A.G. v. North Am. Div. of Seventh-Day Adventists et al.*, Civ. No. BAH-25-2326.

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

4

Though the alleged abuse occurred decades ago, *see e.g.*, *id.* at 9 ¶ 26 (alleging A.G.'s abuse occurred over twenty-five years ago, beginning in approximately 1999 and ending in 2000), Plaintiffs assert that their claims are timely filed pursuant to the Maryland Child Victims Act of 2023, Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 5-117 (the "CVA"), *id.* at 6 ¶ 15. Defendants removed the case to federal court in July of 2025, based on diversity jurisdiction under 28 U.S.C. § 1332(a). ECF 1 (notice of removal). Pending before the Court in all twelve cases are the Seventh-Day Defendants' motions to dismiss, Mountain View's motions to vacate default, and Mountain View's motions to dismiss. Plaintiffs oppose Defendants' motions, and Defendants have filed their respective replies. All filings include memoranda of law, and some filings include exhibits. The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025).

Accordingly, for the reasons stated below, Mountain View's motions to set side default and motions to dismiss are **GRANTED**. The question of whether the CVA applies to claims arising out of sexual abuse of non-resident children alleged to have occurred wholly outside of Maryland will be **CERTIFIED** to the Supreme Court of Maryland. The Seventh-Day Defendants' motions to dismiss are **DENIED** without prejudice to be refiled after the Supreme Court of Maryland resolves the certified question.

## I.   BACKGROUND

Plaintiffs, non-Maryland residents,[3] allege that during various time periods between 1995 and 2003 they each lived at Miracle Meadows, a "Christian boarding school" in West Virginia

---

[3] No Plaintiff alleges they were ever residents of Maryland, and all Plaintiffs allege current residency in states other than Maryland. *See A.G.*, Civ. No. 25-2326-BAH (Wisconsin); *A.T.*, Civ. No. BAH-25-2451 (Florida); *C.L.*, Civ. No. BAH-25-2328 (Oregon); *D.S.*, Civ. No. BAH-25-2452 (Pennsylvania); *I.H.*, Civ. No. BAH-25-2450 (Florida); *J.K.*, Civ. No. BAH-25-2325 (Florida); *J.P.*, Civ. No. BAH-25-2453 (Texas); *K.D.*, Civ. No. BAH-25-2456 (Indiana); *S.E.*, Civ. No. BAH-25-2458 (Indiana); *S.M.*, Civ. No. BAH-25-2455 (Texas); *T.P.*, Civ. No. BAH-25-2457

where "parents and guardians [sent] their 'troubled' children to be 'cured' through religion." ECF 2, at 5–6 ¶ 12, at 9 ¶ 26. Plaintiffs allege that they and other children at Miracle Meadows were subjected to horrific physical abuse, sexual abuse, and neglect. *Id.* at 9 ¶ 30. For example, A.G. alleges that he was "forced to undergo invasive and arbitrary cavity searches by [a] Miracle Meadows staff member," which constituted sexual abuse. *Id.* at 11 ¶ 38. Other Plaintiffs allege sexual abuse such as groping, forcible rape, or coerced sexual acts. *See, e.g.,* ECF 2, in *D.S.,* Civ. No. BAH-25-2452 at 11 ¶ 39 (alleging that a Miracle Meadows staff member coerced D.S. into sexual intercourse on more than ten occasions); ECF 2, in *I.H.,* BAH-25-2450, at 11 ¶ 38 (alleging a Miracle Meadows staff member forcibly raped I.H.). Plaintiffs also allege that Miracle Meadows had a common practice of quarantining students, "a process wherein children would be locked inside a 4 x 10 or 5 x 8 room alone for extended periods of time with nothing more than a bucket in which to urinate and defecate," and "would often get nothing more to eat in a day than bread and fruit for one meal and rice and beans for another." *Id.* at 9–10 ¶¶ 31–32.

The director of Miracle Meadows, Susan Gayle Clark, was convicted of child neglect in February of 2016 "relating to her failure to report numerous instances of child neglect that she knew was occurring at Miracle Meadows." *Id.* at 7 ¶ 19. Plaintiffs allege that "Miracle Meadows was an agent and ministry of Defendants" and Clark was "acting as an agent" of Defendants. *Id.* ¶¶ 17–18. According to Plaintiffs, Defendants controlled Miracle Meadows and its staff, including by providing financial and logistical support for students' tuition and travel to Miracle Meadows, providing and overseeing staff to help run the school, and requiring Miracle Meadows students to

---

(Georgia); *T.R.,* Civ. No. BAH-25-2329 (Oklahoma). Each Plaintiff also alleges that during the relevant period when their alleged abuse occurred, they were "minor[s] residing at Miracle Meadows . . . in Salem, West Virginia." *See, e.g.,* ECF 2, at 2 ¶ 1, in *A.G.,* Civ. No. 25-2326-BAH.

travel to Seventh-Day Adventist churches in Maryland to perform. *Id.* at 5 ¶¶ 9–11. Plaintiffs also contend that Defendants marketed Miracle Meadows to Maryland residents and nationwide through their Maryland-based periodical, the Columbia Union Visitor, and by sending Clark to promote the school at Seventh-Day Adventist conventions and on Defendants' 3ABN television network. *Id.* at 6 ¶ 13.

## II.    STATUTORY OVERVIEW

These twelve cases implicate state statutes that extend the limitations period for claims arising out of alleged sexual abuse. Maryland has established a "longer limitations period for child sexual abuse claims" since 2003,[4] "when it adopted § 5-117 of the Courts and Judicial Proceedings Article, which established a seven-year limitations period for such claims." *Roman Catholic Archbishop of Washington v. Doe*, 330 A.3d 1069, 1074 (Md. 2025). "In 2017, the General Assembly passed two identical bills to further expand the limitations period." *Id.* (citing Md. Laws, Chs. 12 & 656). The 2017 version of § 5-117(d) provided:

> In no event may an action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor be filed against a person or governmental entity that is not the alleged perpetrator more than 20 years after the date on which the victim reaches the age of majority.

*Id.* Then, in 2023, Maryland passed the CVA, which further amended CJP § 5-117. It now provides, in relevant part, that "notwithstanding any time limitation under a statute of limitations, a statute of repose, the Maryland Tort Claims Act, the Local Government Tort Claims Act, or any other law, an action for damages arising out of a claim or claims of sexual abuse that occurred while the victim was a minor may be filed at any time."[5] CJP § 5-117(b). In other words, Maryland

---

[4] The statute of limitations for an ordinary tort claim in Maryland is three years. *See* Md. Code Ann., Courts and Judicial Proceedings § 5-101.

[5] The definition of "sexual abuse," under the CVA includes, among other things, "rape," "sexual offense in any degree," or "[a]ny other sexual conduct that is a crime." CJP § 5117(a)(3)–(5).

now imposes no temporal limitation on the right to bring an action for damages arising out of an alleged incident of sexual abuse of a minor. *See Roman Catholic Archbishop of Washington*, 330 A.3d at 1075.

West Virginia, on the other hand, does impose a limit on the right to bring an action arising from alleged abuse. West Virginia Code § 55-2-15 provides that "[a] personal action for damages resulting from sexual assault or sexual abuse of a person who was an infant at the time of the act or acts alleged shall be brought against a person or entity which aided, abetted, or concealed the sexual assault or sexual abuse within 18 years after reaching the age of majority." W. Va. Code § 55-2-15(a). Although longer than the limitations period applicable to general tort claims,[6] unlike Maryland, West Virginia does not permit actions arising from sexual assault or abuse of a minor to survive in perpetuity.

## III.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(2)

"[A] Rule 12(b)(2) challenge" to personal jurisdiction "raises an issue for the court to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Id.* "[A] court has broad discretion to determine the procedure that it will follow in resolving a Rule 12(b)(2)

---

[6] Generally, the statute of limitations applicable to an ordinary tort claim in West Virginia is two years. *See* W. Va. Code § 55-2-12 ("Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.").

motion." *Id.* at 268. "[N]either discovery nor an evidentiary hearing is required in order for the court to resolve a motion under Rule 12(b)(2)." *Jones v. Mut. of Omaha Ins. Co.*, 639 F. Supp. 3d 537, 544 (D. Md. 2022). "When 'the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question.'" *Id.* (quoting *Combs*, 886 F.2d at 676).

"When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a prima facie case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). "This 'prima facie case' analysis resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Id.* "The court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Aerotek Inc. v. Babcock & Wilcox Solar Energy, Inc.*, Civ. No. JRR-24-177, 2024 WL 4792116, at *2 (D. Md. Nov. 14, 2014) (citing *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196–97 (4th Cir. 2018)). In resolving a motion brought under Rule 12(b)(2), "a court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (citing *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)).

## B.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S.

9

662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

"Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, *see* Fed. R. Civ. P. 8(c), and the burden of establishing the affirmative defense rests on the defendant." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "It follows, therefore, that a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Id.* "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Id.* "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Id.* (emphasis in *Goodman*) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir.1993)).

10

## IV.    ANALYSIS

### A.    Mountain View's Motion to Set Aside Default

As a threshold matter, the Court resolves Mountain View's motions to set aside default. In February of 2026, Plaintiffs moved for the Clerk's Entry of Default against Mountain View for want of answer or other defense. ECF 35. The Clerk then entered default as to Mountain View and sent notice to Mountain View. ECF 36 (entry of default); ECF 37 (notice of default). In March of 2026, Mountain View filed motions to vacate or set aside the Clerk's prior entry of default and for leave to respond to the complaint. ECF 38.

Rule 55 of the Federal Rules of Civil Procedure permits a Court to "set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "The disposition of motions made under Rule [ ] 55(c) . . . is a matter which lies largely within the discretion of the trial judge and his action is not lightly to be disturbed by an appellate court." *Payne ex rel. Est. of Calzada v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006) (quoting *Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967)). "When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Id.* The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) (collecting cases).

Mountain View asserts that its "failure to file a timely response was the result of a delay by Mountain View's insurer retaining counsel on Mountain View's behalf." ECF 38-1, at 3–4 ¶ 10. Once such counsel was engaged, Mountain View stated that its counsel "immediately

11

reached out to Plaintiff[s'] counsel and advised that the undersigned was retained to represent Mountain View in all 13 matters." *Id.* at 4 ¶ 11. Mountain View asserts that despite such communications, Plaintiffs' counsel nevertheless filed the motion for Clerk's entry of default. *Id.* at 4 ¶ 12. Because the Court has not yet issued a scheduling order nor have the parties commenced discovery, and because there is a pending motion to dismiss filed by other defendants, Mountain View argues that Plaintiffs will not be prejudiced by vacating the order of default. *See id.* at 4 ¶ 13, at 5 ¶ 15.

Upon consideration of Mountain View's assertions, the factors discussed above, and the Fourth Circuit's strong preference for disposing of matters on their merits, the Court concludes that the Clerk's entry of default as to Mountain View should be vacated. First, the Court finds that Mountain View may be able to mount a meritorious defense to a least some of Plaintiffs' claims. In addition to the statute of limitations argument already advanced in the pending motion to dismiss, Mountain View contends that it will argue that the action should be dismissed against it for want of personal jurisdiction. *Id.* at 5 ¶ 16; *see Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Generali-U.S. Branch*, 345 F.R.D. 592, 595–96 (D. Md. 2024) ("It is enough for the Court to observe that, if Generali's account is true, it may have a meritorious defense to at least some of Penn National's claims."). The Court also finds that Mountain View has acted with reasonable promptness to set aside default. Default was entered and the notice of default was sent to Mountain View in February of 2026. ECF 36 (entry of default); ECF 37 (notice of default). Mountain View filed to vacate the default shortly after, in March of 2026. ECF 38. "District courts in the Fourth Circuit have found that a defendant acted reasonably promptly when waiting seventeen, twenty-one, and thirty-two days after default was entered before attempting to set it aside." *See Burton v. The TJX Companies, Inc.*, No. 3:07-CV-760, 2008 WL 1944033, at *3 (E.D. Va. May 1, 2008).

Additionally, it does not appear that Mountain View bears significant personal responsibility for the delay, which it represents was due to its insurer. *See Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953 (4th Cir. 1987) (reasoning that a party should not be penalized by default for the errors of its attorney). And Mountain View has no history of dilatory action in these cases. Further, the Court finds that Plaintiffs would not suffer any prejudice by setting aside default here, on account of the litigation's early stage and the already pending motions to dismiss. *See Colleton Preparatory Acad., Inc.*, 616 F.3d at 419 n.6 ("[P]rejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits." (citation omitted)). Finally, considering the availability of sanctions less drastic than an entry of default, the Court finds no need for any sanctions at this time. For these reasons, Mountain View's motions to set aside default are granted.

### B.   Mountain View's 12(b)(2) Motion

Mountain View asserts that this Court lacks personal jurisdiction over it pursuant to Rule 12(b)(2).[7] ECF 39-1, at 8. "Absent consent, the exercise of personal jurisdiction must comport with the requirements of the Due Process Clause: valid service of process, as well as . . . minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020) (internal quotation marks omitted) (quoting *Hawkins*, 935 F.3d at 228). "The nature and quantity of forum-state contacts required depends on whether the case involves the exercise of 'specific' or 'general' jurisdiction." *Id.* Moreover, "[u]nder Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th

---

[7] Mountain View also adopts the 12(b)(6) arguments set forth in Seventh-Day Defendants' motion to dismiss. ECF 39-1, at 8.

Cir. 2003). Thus, in order for "a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.* (citing *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan,* 259 F.3d 209, 215 (4th Cir. 2001)).

Maryland's long-arm statute is codified at CJP § 6-103(b). The statute "limits specific jurisdiction to cases where the cause of action 'aris[es] from any act enumerated in the statute itself.'" *Phillips v. Brit. Airways,* 743 F. Supp. 3d 702 (D. Md. 2024) (alteration in *Phillips*) (quoting CJP § 6-103(a)). Such acts include, in relevant part, transacting "any business . . . in the State," causing "tortious injury in the State or outside of the state by an act or omission outside the State if . . . regularly do[ing] or solicit[ing] business" in the State, and having "an interest in, us[ing] or possess[ing] real property in the State." CJP §§ 6-103(b)(1), (4), (5); *see also* ECF 40-1, at 19. "Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution." *Carefirst of Md.,* 334 F. 3d at 396 (citing *Mohamed v. Michael,* 370 A.2d 551, 553 (Md. 1977)). "Thus, [the] statutory inquiry merges with [the] constitutional inquiry." *Id.* at 396–97.

### 1. General Jurisdiction

Plaintiffs argue that the Court has general jurisdiction over Mountain View even though Mountain View is undisputably a West Virginia entity. ECF 40-1, at 10, 14–15. "General jurisdiction permits the court to hear any and all claims against the defendant, regardless of where the claims arose or the plaintiff's citizenship." *Fidrych,* 952 F.3d at 131. It "may be exercised when the defendant has contacts with the forum jurisdiction that are 'so constant and pervasive as to render it essentially at home in the forum State.'" *Id.* at 131–32 (quoting *Daimler AG v. Bauman,* 571 U.S. 117, 122 (2014)). "[T]he paradigm forums where corporations are fairly

14

regarded as at home are the forums where it is incorporated and where it has its principal place of business."[8]  *Id.* at 132.  "[W]hile those paradigms are not necessarily the only bases for general jurisdiction, it would be 'unacceptably grasping' to approve the exercise of general jurisdiction wherever a corporation, 'engages in a substantial, continuous, and systemic course of business.'" *Barnett v. Surefire Med., Inc.*, Civ. No. JFM-17-1332, 2017 WL 4279497, at *2 (D. Md. Sept. 25, 2017) (quoting *Daimler*, 571 U.S. at 137).  In other words, "[i]n-state business . . . does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in [the forum state.]" *Tyler-Simms v. Vineyard Vines Retail, LLC*, Civ. No. GJH-20-3081, 2021 WL 3080064, at *2 (D. Md. July 20, 2021) (alterations in *Tyler-Simms*) (quoting *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017)).  "The Supreme Court has emphasized that a corporation is at home only in its place of incorporation and its principal place of business unless there is an *exceptional case* that renders the corporation at home elsewhere." *Id.* (citation modified) (emphasis in original).

Plaintiffs argue that even though Mountain View is a West Virginia entity, "this is an 'exceptional case'" that warrants finding that Mountain View is subject to general jurisdiction in Maryland for the following reasons: Mountain View is a "participant in a regional conference that includes Maryland counties," "shares board members" with the Seventh-Day Defendants (who are all Maryland-based), "promoted [Miracle Meadows] to Maryland families," "transported children

---

[8] Mountain View asserts, and Plaintiffs do not dispute, that the same standard applicable to corporations applies to unincorporated associations like Mountain View.  ECF 39-1, at 9; *see also Haw v. Nat'l Collegiate Athletic Ass'n*, 309 A.3d 64, 89 (Md. App. 2024) (finding "no reason to treat an unincorporated association differently from a corporation or partnership" for purposes of a personal jurisdiction analysis).

and families between Maryland and West Virginia,"[9] "participated with other Defendants in the operation in supervision of" Miracle Meadows, "knew or should have known about the atrocities being committed at the school," and "conspired with the [Seventh-Day] Defendants." ECF 40-1, at 15. However, these activities do not render Mountain View "essentially at home" in Maryland, and Plaintiffs do not cite to any caselaw that supports a finding of general jurisdiction under similar circumstances. Indeed, this Court has previously rejected attempts to exercise general jurisdiction over companies that are neither incorporated in Maryland nor have their principal place of business here. *See, e.g.*, *DeBellis v. Woodit*, 728 F. Supp. 3d 330, 340 (D. Md. 2024) (finding no general jurisdiction where the foreign defendant allegedly "transports horses to Maryland, conducts online auctions, advertises to Maryland customers, and has filed suit in Maryland Courts").

Plaintiffs cite to *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), as the "textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum." ECF 40-1, at 14 (quoting *Daimler*, 571 U.S. at 129). The circumstances presented here are different than those in *Perkins*. "In *Perkins*, the Supreme Court held that general jurisdiction existed for a defendant corporation in Ohio where that corporation had relocated temporarily from the Philippines to Ohio during Japan's wartime occupation of the Philippines." *Walton v. W.L. Gore & Assocs.*, Civ. No. BAH-25-1948, 2026 WL 809295, at *6 (D. Md. Mar. 23, 2026) (citing *Perkins*, 342 U.S. at 447–48). "The relocation involved the president, general manager, and principal stockholder of the company returning to Ohio and maintaining an office there, carrying out business operations in and directing the corporation's activities from Ohio, and holding several directors' meetings." *Id.* (citing the same). Contrary to

---

[9] Plaintiffs do not allege in their complaints that Mountain View transported children between West Virginia and Maryland. Rather, they allege that *Miracle Meadows staff* traveled to Maryland to pick up children and transport them back to West Virginia. ECF 2, at 5 ¶ 11.

the non-resident defendant in *Perkins*, Plaintiffs do not allege that Mountain View maintains an office, carries out any business operations, or directs any activities from Maryland. Rather, the contacts that Plaintiffs contend support general jurisdiction are more like those found in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, where the Supreme Court held that a company incorporated in Columbia was not at home in Texas even where its contacts with Texas included sending its chief executive officer to Houston for contract a negotiation session, accepting into its New York bank account checks drawn on a Houston bank, purchasing helicopters, equipment, and training services from a Texas helicopter company, and sending personnel to Texas for training. 466 U.S. 408, 416–19 (1984). In sum, Mountain View's contacts with Maryland are not of such a substantial nature to warrant general jurisdiction. *Cf. Cutcher v. Midland Funding, LLC*, Civ. No. ELH-13-3733, 2014 WL 2109916, at *7 (D. Md. May 19, 2014) (holding non-resident company that conducted business and maintained an office in Maryland was not "at home" in Maryland).

### 2. Specific Jurisdiction

Where a "defendant does not have sufficient contacts to be at home in the forum, the court may exercise specific jurisdiction if the defendant has continuous and systematic contacts with the forum state and the claims at issue arise from those contacts with the forum state." *Fidrych*, 952 F.3d at 132 (citing *Daimler*, 571 U.S. at 126–27). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017). "The Fourth Circuit has formulated a three-part test for use in determining whether there is specific jurisdiction over a defendant. The three prongs are: '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the

17

exercise of personal jurisdiction would be constitutionally reasonable.'" *Jones*, 639 F. Supp. 3d at 549 (quoting *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)).

Mountain View does not contest that it has "purposefully availed itself of the privilege of conducting activities in the state." ECF 39-1, at 10 ("Mountain View does not challenge the first prong."). Instead, it argues that Plaintiffs fail to satisfy the second prong of the test because their claims do not arise out of Mountain View's contacts with Maryland. Specifically, Mountain View argues that "[a]ll of the tortious conduct alleged in the Complaint occurred exclusively at Miracle Meadows" in West Virginia. *Id.* at 11. The second prong "demands that the suit arise out of *or* relate to the defendant's contacts with the forum." *Bradley v. DentalPlans.com.*, 617 F. Supp. 3d 326, 336 (D. Md. 2022) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021)). "The first half of that standard—the 'arise out of' phrase—asks about causation, while the back half—the 'relate to' phrase—'contemplates that some relationships will support jurisdiction without a causal showing.'" *Id.* (quoting the same). "A plaintiff may satisfy the nexus requirement by showing that the suit *either* 'arises out of' *or* 'relates to' the defendant's contacts with the forum." *Id.* "[W]hile the phrase 'relates to' is clearly more encompassing than a causal nexus, 'that does not mean anything goes,' and the Supreme Court cautioned that the phrase 'relate to' has 'real limits' in order to 'adequately protect defendants foreign to a forum.'" *DeBellis*, 728 F. Supp. 3d at 342 (quoting *Ford Motor Co.*, 592 U.S. at 362).

Plaintiffs make a number of allegations regarding Mountain View's conduct, but only some involve acts related to contacts in or directed at Maryland. Those allegations are that Mountain View is "part of a regional territory that encompasses Maryland counties," ECF 40-1, at 20, "markets [Miracle Meadows] to Maryland residents," *id.*, financially supported some Maryland students' enrollment in and travel to Miracle Meadows, ECF 2, at 5 ¶ 9, and required Miracle

Meadows students to travel to Maryland to perform at churches, *id.* ¶ 10; *see also id.* at 8 ¶ 21 (alleging that all Defendants "promoted and advertised Miracle Meadows throughout this Country, including specifically throughout the State of Maryland" in an effort to have families "send their children to Miracle Meadows"). But even if Mountain View conducts these activities in Maryland, Plaintiffs do not allege that any of this conduct gives rise to or relates to their individual claims. For example, Plaintiffs, as non-Maryland residents, do not allege that Mountain View's promotion of Miracle Meadows in Maryland caused the physical or sexual abuse they suffered in West Virginia, or even that such advertising in Maryland (or anywhere) related to their attendance at Miracle Meadows. *Cf. Walton*, 2026 WL 809295, at *8 (finding no nexus to claims for plaintiffs alleging misrepresentation arising from the tag of a garment made by an out-of-state defendant where plaintiffs encountered the hang tag in their home state and not the forum state). They likewise do not allege that any of the other conduct that Miracle Meadows purportedly directed to Maryland residents involved Plaintiffs (or their claims) in any way.

Ultimately, Plaintiffs' allegations against Mountain View "involve[ ] non-resident plaintiff[s] suing, among others, a non-resident defendant in Maryland based upon . . . alleged tortious actions that did not occur in Maryland." *DeBellis*, 728 F. Supp. 3d at 346. "Thus, Plaintiff[s] ha[ve] failed to prove a prima facie basis for the Court's exercise of jurisdiction over [Mountain View] in this case because Plaintiffs ha[ve] not alleged facts that, if true, would establish a sufficiently related nexus between Plaintiff[s'] claims against [Mountain View] and [Mountain View]'s contacts with Maryland." *See id.* As Plaintiffs have failed to establish the requisite nexus to satisfy due process, the Court need not reach the question of whether specific jurisdiction is proper under Maryland's long-arm statute. *Cf. Stewart v. Jayco, Inc.*, Civ. No. ELH-16-3494, 2017 WL 193296, at *6 (D. Md. Jan. 18, 2017) ("I need not consider the statutory

question under Maryland's long arm statute ... because the Court's exercise of personal jurisdiction over defendant flies in the face of due process.").

### 3. Jurisdictional Discovery

Plaintiffs request limited jurisdictional discovery with respect to general jurisdiction. ECF 40-1, at 15. "[T]he decision of whether or not to permit jurisdictional discovery is a matter committed to the sound discretion of the district court." *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002). Plaintiffs do not identify any potential facts that they might uncover that would alter the Court's ultimate conclusion about general jurisdiction to warrant jurisdictional discovery. As such, Plaintiffs' request for jurisdictional discovery is denied. *Cf. Hart v. Carver*, Civ. No. JRR-23-3499, 2024 WL 4025837, at *9 (D. Md. Sept. 3, 2024) (denying jurisdictional discovery where, among other things, the requestor made "no proffer about 'further facts that it could demonstrate that would be material to the limited jurisdictional ruling'" (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 706, 716 n.3 (4th Cir. 2002))).

For the reasons stated above, Mountain View's motions to dismiss are granted for lack of personal jurisdiction.

### C. Seventh-Day Defendants' 12(b)(6) Motion

#### 1. Choice of Law

Seventh-Day Defendants move to dismiss the complaint pursuant to Rule 12(b)(6). ECF 20. Their primary argument is that Plaintiffs cannot invoke the CVA to bring their claims in Maryland because the alleged sexual abuse wholly occurred in West Virginia. *See* ECF 20-1, at 13. However, to properly consider that question, the Court must first answer the antecedent question of whether Maryland or West Virginia law applies, and to which aspects of the case each state law applies. *See* ECF 20-1, at 18–20; ECF 25-1, at 26–31.

This Court considers this case in exercise of its diversity jurisdiction under 28 U.S.C. 1332(a). ECF 1, at 3. "A federal court sitting in diversity is required to apply the *substantive* law of the forum state, including its choice-of-law rules." *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013) (emphasis added) (first citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); and then citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938)). Accordingly, this Court applies Maryland's choice-of-law rules.[10]

Maryland's choice-of-law analysis depends on the type of claim alleged. *See Hunter v. Abbott Lab'ys, Inc.*, Civ. No. BAH-25-1544, 2026 WL 479085, at *10 n.7 (D. Md. Feb. 20, 2026). Plaintiffs allege five claims sounding in common law tort. *See* ECF 2, at 13 (Count I: Negligence), at 15 (Count II: Negligent Hiring Training, Supervision and Retention), at 17 (Count III: Civil Conspiracy), at 20 (Count IV: Vicarious Liability),[11] at 21 (Count V: Failure to Warn). Maryland courts generally adhere "to the *lex loci delicti* principle in tort cases." *Lab'y Corp. of Am. v. Hood*, 911 A.2d 841, 845 (Md. 2006); *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 230, 233 n.28 (Md. 2000). "Under the doctrine, a court evaluates a party's tort liability according to the law of the

---

[10] The parties agree that Maryland's choice of law rules determine the law applicable to the complaint. *See* ECF 20-1, at 18; ECF 25-1, at 27.

[11] Under both Maryland and West Virginia law, claims of civil conspiracy and vicarious liability are not independent causes of action. *See Davenport v. Maryland*, 38 F. Supp. 3d 679, 693 (D. Md. 2014) ("Maryland does not recognize an independent cause of action for civil conspiracy. . . . Rather, a 'defendant's liability for civil conspiracy depends entirely on its liability for a substantive tort.'" (quoting *Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 247 F. Supp. 2d 773, 777 (D. Md. 2003))); *Dunn v. Rockwell*, 689 S.E.2d 255, 269 (W.Va. 2009) (explaining that under West Virginia law, "[a] civil conspiracy is not a *per se*, stand-alone cause of action"); *McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F. Supp. 2d 94, 97 (D. Md. 2011) ("Vicarious liability is, of course, not an independent cause of action, but rather a theory of assigning liability" under Maryland law); *Doe v. City of Gauley Bridge*, No. 2:21-CV-00491, 2022 WL 3587827, at *13 (S.D.W. Va. Aug. 22, 2022) ("Vicarious liability 'is not a separate cause of action,' but rather a theory of assigning liability." (quoting *Penn v. Citizens Telecom Servs. Co., LLC*, 999 F. Supp. 2d 888, 894 (S.D.W. Va. 2014))).

21

place of wrong." *Doctor's Weight Loss Centers, Inc. v. Blackston*, 319 A.3d 1102, 1111 (Md. 2024). "When a case's facts concern a single state, *lex loci delicti* is easy to apply." *Id.* at 1112. "But, when the facts concern multiple states, Maryland 'appl[ies] the [substantive] law of the [s]tate where the injury—the last event required to constitute the tort—occurred.'" *Id.* (quoting *Hood*, 911 A.2d at 845). "For example, . . . if an individual has an automobile insured with a Maryland-based policy but suffers a motor vehicle accident in Delaware, *lex loci delicti* dictates that Delaware's insurance and automobile law applies instead of Maryland's." *Id.* (citing *Erie Ins. Exch. v. Heffernan*, 925 A.2d 636, 649 (Md. 2007)).

Plaintiffs argue that Maryland's substantive law applies because "the operative tortious conduct—the negligent supervision and institutional failures—occurred at Defendants' Maryland headquarters." ECF 25-1, at 12. However, for every cause of action asserted here, although some of the alleged conduct Seventh-Day Defendants engaged in occurred in Maryland, "the last event required to constitute the tort" was the alleged physical and sexual abuse and neglect, which occurred in West Virginia. *See* ECF 2, at 6–7 ¶ 16. Accordingly, Maryland's choice of law doctrine dictates that this Court apply West Virginia's substantive law to the tort claims alleged.

The Court now turns to the key dispute here—whether Maryland or West Virginia's applicable statute of limitations (or lack thereof) applies and, accordingly, whether Plaintiffs' claims are time barred. "In tort actions, . . . Maryland adheres to the rule that while the law of another state may govern substantive matters, the law of the forum state governs procedural matters." *Fox v. Encounters Int'l*, 318 F. Supp. 2d 279, 290 (D. Md. 2002) (citing *Sokolowski v. Flanzer*, 769 F.2d 975 (4th Cir.1985)). "Maryland choice-of-law principles treat statutes of limitations as procedural rules such that Maryland statutes of limitations apply even where claims are governed by another state's substantive laws." *Higgins v. McDonald*, 826 F. Supp. 3d 640,

649 (D. Md. 2026) (collecting cases); *see also Turner v. Yamaha Motor Corp., U.S.A.*, 591 A.2d 886, 887 (Md. App. 1991) (explaining that even where a tort action is governed by another state's substantive law, the question as to which period of limitations applies is a matter of procedural, not substantive law"); *Doughty v. Prettyman*, 148 A.2d 438, 440 (Md. 1959) ("Questions of substantive law are therefore to be decided according to the law of [Virgina], but procedural matters are governed by Maryland law. Included in the procedural matters governed by the law of this state is the statute of limitations." (citation modified)). "Conversely, Maryland choice-of-law principles treat statutes of repose as substantive law." *Higgins*, 826 F. Supp. 3d at 650. "Accordingly, determination of whether § [55-2-15] is applicable substantive law or inapplicable procedural law depends on whether it is properly viewed as a statute of repose or as a statute of limitations under Maryland law." *Id.*

In *Roman Catholic Archbishop of Washington v. Doe*, the Supreme Court of Maryland held that the 2017 iteration of CJP § 5-117(d) was a statute of limitations, not a statute of repose. 330 A.3d at 1073. The 2017 provision "stated that '[i]n no event' may a civil action for child sexual abuse be filed against a defendant not alleged to have been the perpetrator of the abuse 'more than 20 years after the date on which the victim reaches the age of majority.'" *Id.* (quoting 2017 Md. Laws, Ch. 12, § 1; 2017 Md. Laws, Ch. 656, § 1). Recognizing that "it is not always easy to tell which one a legislative body intended to adopt," the court provided a helpful framework to aid courts in distinguishing between a statute of limitations and a statute of repose. *Id.* at 1080. Specifically, the court explained the "typical points of distinction in areas including purpose, operation, trigger, and tolling," *id.* at 1078, explained in more detail below.

23

### i.  Purpose

A statute of limitations and a statute of repose generally serve different purposes.  The purpose of a statute of limitations is "to encourage prompt resolution of claims, to suppress stale claims, and to avoid the problems associated with extended delays in bringing a cause of action, including missing witnesses, faded memories, and the loss of evidence." *Id.* at 1078 (quoting *Anderson v. United States*, 46 A.3d 426, 438 (Md. 2012)).  "[T]hey 'are designed to (1) provide adequate time for diligent plaintiffs to file suit, (2) grant repose to defendants when plaintiffs have tarried for an unreasonable period of time, and (3) serve society by promoting judicial economy.'" *Id.* at 1079 (quoting *Pennwalt Corp. v. Nasios*, 550 A.2d 1155, 1158 (Md. 1988)).  On the other hand, "[t]he purpose of a statute of repose is to provide an absolute bar to an action or to provide a grant of immunity to a class of potential defendants after a designated time period." *Id.* (quoting *Anderson*, 46 A.3d at 437–38).

### ii.  Operation

A statute of limitations and a statute of repose also operate differently.  "Statutes of limitations are remedial or procedural devices that 'do not create any substantive rights in a defendant to be free from liability.'" *Id.* at 1080 (quoting *Anderson*, 46 A.3d at 437).  "They therefore 'are generally understood to extinguish the *remedy* for enforcing a right, not the right itself.'" *Id.* (quoting *Park Plus, Inc. v. Palisades of Towson, LLC*, 272 A.3d 309, 320 (Md. 2022)) (emphasis in *Park Plus*).  "In other words, '[a] statute of limitations . . . neither creates a right of action nor pertains to the merits of a cause of action; rather, it regulates the plaintiff's exercise of that right.'" *Id.* (quoting *Murphy v. Liberty Mut. Ins. Co.*, 274 A.3d 412, 437 (Md. 2022)).  "Statutes of repose, on the other hand, 'create a substantive right protecting a defendant from liability[.]'" *Id.* (quoting *Anderson*, 46 A.3d at 439).  "Like a discharge from bankruptcy, a statute

24

of repose can be said to provide a fresh start or freedom from liability." *Id.* (quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014)). "The running of a statute of repose extinguishes the cause of action, not just the remedy." *Id.*

### iii.    Trigger

"Statutes of limitations and statutes of repose are also distinguished by their respective triggering events." *Id.* "The trigger for a statute of limitations is 'typically . . . the accrual of a claim,' which is most often the occurrence or discovery of injury." *Id.* (quoting *Anderson*, 46 A.3d at 437). "By contrast, the trigger for a statute of repose is 'unrelated to when the injury or discovery of the injury occurs.'" *Id.* (quoting the same). "That trigger is an unrelated event, act, or omission, often the last culpable act or omission of the defendant." *Id.* (citation modified). "Because the trigger for a statute of repose is unrelated to accrual, such a statute may even extinguish a 'right to bring a claim before the cause of action accrues.'" *Id.* at 1081 (quoting *Anderson*, 46 A.3d at 438).

### iv.    Tolling

"Also reflective of their different purposes, statutes of limitations are generally subject to tolling during the plaintiff's minority and for fraudulent concealment, while statutes of repose are not." *Id.* (quoting *Anderson*, 46 A.3d at 439). "The United States Supreme Court referred to this as a 'central distinction between statutes of limitations and statutes of repose [that] underscores their differing purposes.'" *Id.* (quoting *Waldburger*, 573 U.S. at 9 ("Statutes of limitations, but not statutes of repose, are subject to equitable tolling," whereas statutes of repose "generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control.")).

### v.    West Virginia Code § 55-2-15 is a statute of limitations

Determining whether § 55-2-15 is a statute of limitations or statute or a statute of repose requires the Court to engage in some statutory interpretation. "Ordinarily when interpreting a state

25

statute . . . a federal[] court 'defer[s] to statutory interpretation conducted by the state's highest court.'" *Willey v. Brown*, Civ. No. BAH-23-2299, 2024 WL 3557937, at \*9 (D. Md. July 25, 2024) (quoting *Castillo v. Holder*, 776 F.3d 262, 268 n.3 (4th Cir. 2015)). "If there is no interpretation from the state's highest court, an interpretation from an intermediate appellate court often provides 'the next best indicia of what state law is.'" *Id.* (quoting *United States v. O'Brien*, 356 F. Supp. 3d 518, 525 (D. Md. 2018)). And generally, "the starting point for any issue of statutory interpretation . . . is the language of the statute itself." *Child Trends, Inc. v. United States Dep't of Educ.*, 795 F. Supp. 3d 700, 723 (D. Md. 2025) (quoting *Redeemed Christian Church of God v. Prince George's Cnty.*, 17 F.4th 497, 508 (4th Cir. 2021)). The parties have not brought to the Court's attention any decision by the Supreme Court of Appeals for West Virginia or West Virginia's intermediate appellate court directly addressing the precise question of whether § 55-2-15 is a statute of limitations or statute of repose. After careful analysis of relevant West Virginia caselaw, the Court concludes that West Virginia Code § 55-2-15 is a statute of limitations. As such, it is considered a procedural matter under Maryland's choice-of-law rules and does not apply to Plaintiffs' claims.

First, the Supreme Court of Appeals of West Virginia has explained in *dicta* that "[t]he general purpose of W. Va. Code § 55-2-15 (1923) is to toll the commencement of the running of the statute of limitations so that the legal rights of infants and the mentally ill may be protected." *Worley v. Beckley Mech., Inc.*, 648 S.E.2d 620, 625 (W. Va. 2007); *see also Whitlow v. Bd. of Educ. of Kanawha Cnty.*, 438 S.E.2d 15, 17 (W.Va. 1993) (explaining that the purpose of § 55-2-15 is for "tolling the statute of limitations period for suits brought by persons under a disability"), at 18 (explaining that § 55-2-15 deals with not only "tolling the statute of limitations for minors during their minority" but is also considered West Virginia's "general tolling statute for purposes

26

of extending the time when one under a disability may file an action"). That court has also referred to § 55-2-15 as a "statute of limitations," *see McDowell Cnty. Bd. of Educ. v. Stephens*, 447 S.E.2d 912, 918, 920 (W.Va. 1994), and, in discussing a parental consortium claim, invoked § 55-2-15 as an example of a "procedural mechanism" that "avoids the problem of exposing the tortfeasor to potentially numerous, delayed claims," *Belcher v. Goins*, 400 S.E.2d 830, 839 (W.Va. 1990). Although labeling is not dispositive of the statute's purpose, *see Waldburger*, 573 U.S. at 13–14, it is helpful to the Court's ultimate conclusion that § 55-2-15 is meant to "encourage prompt resolution of claims" as a statute of limitations, rather than "provide a grant of immunity" as a statute of repose. *Roman Cath. Archbishop of Washington*, 330 A.3d at 1078–79. Moreover, nothing in the language of the statute supports a finding that the purpose of § 55-2-15 is to "create an absolute bar or immunity to a cause of action to benefit a class of potential defendants." *Id.* at 1093. It merely provides a deadline—"within 18 years after reaching the age of majority"—by which any "personal action for damages resulting from sexual assault or sexual abuse of a person who was an infant at the time of the act or acts alleged shall be brought." W. Va. Code § 55-2-15(a). The statute's purpose seems to be just as West Virginia's high court has explained— to toll West Virginia's general statute of limitations for suits brought by minors or persons under a disability. *See Worley*, 648 S.E.2d at 625; *see also S.W. v. Pressley Ridge*, No. 25-1791, 2026 WL 735178, at *1 (4th Cir. Mar. 16, 2026) (describing § 55-2-15(a) as a "West Virginia statute that extends the normal limitations period for claims 'brought against a person or entity which aided, abetted, or concealed . . . sexual assault or sexual abuse'").

Second, like Maryland's 2017 version of § 5-117(d), West Virginia Code § 55-2-15 "operate[s] like a typical statute of limitations, in that it prohibit[s] *the filing* of a child sexual abuse claim after expiration of the statutory period . . . without purporting to eliminate the cause of action

27

itself." *Roman Cath. Archbishop of Washington*, 330 A.3d at 1094 (emphasis in original). Specifically, § 55-2-15 provides that "[a] personal action for damages . . . *shall be brought*" within the established time period. W. Va. Code § 55-2-15(a) (emphasis added). It "neither creates a right of action nor pertains to the merits of a cause of action," and thus operates as a statute of limitations. *Roman Cath. Archbishop of Washington*, 330 A.3d at 1080.

Third, the tolling and trigger aspects of § 55-2-15 weigh heavily in favor of finding that it is a statute of limitations. Section 55-2-15 is triggered by reaching the age of majority by requiring an action to be brought "within 18 years after reaching the age of majority." § 55-2-15(a). This "effectively incorporate[s] minority tolling into its trigger period." *Roman Cath. Archbishop of Washington*, 330 A.3d at 1095. Of course, "[s]tatutes of limitations are generally subject to tolling, while statutes of repose are not." *Id.* As the Supreme Court of Maryland explained, this type of trigger "function[s] as an accrual-based trigger with built-in tolling" because "a claim for child sexual abuse accrues at the time of the abuse" and, "where tolling is recognized, the date on which a potential plaintiff reaches the age of majority *is* the date when an accrual-based statute of limitations may begin to run." *Id.* Thus, this Court cannot "logically conclude that building minority tolling into the trigger means the trigger is unrelated to the alleged victim's injury."[12] *Id.*

In sum, the application of the factors set forth by the Supreme Court of Maryland bring the Court to the conclusion that West Virginia Code § 55-2-15 is procedural. Accordingly, as the

---

[12] The Supreme Court of Maryland provided a contrasting example of "[a] trigger that is truly unrelated to the alleged victim's injury," which "might, in this context, be the date on which the defendant ceased having any supervisory authority or control over the alleged perpetrator or ceased having any duty of care for the alleged victim." *Roman Cath. Archbishop of Washington*, 330 A.3d at 1095. "Such triggers also would allow non-perpetrator defendants to more readily know when they would enjoy repose, if that had been the [legislature]'s intent." *Id.*

forum state, Maryland would apply its law to the question of what statute of limitations governs Plaintiffs' actions. However, whether the Court should apply Maryland's general statute of limitations of three years for torts, CJP § 5-101, or the limitless statute of limitations in the CVA, CJP § 5-117(b), involves an inquiry into the applicability of the CVA. After careful consideration, the Court believes that this is a question best answered by Maryland's highest court.

### D.    Certified Question to the Supreme Court of Maryland

Seventh-Day Defendants argue that even if the West Virginia statute of limitations is inapplicable to Plaintiffs' claims, the CVA "does not apply to child sex abuse occurring wholly outside the State of Maryland." ECF 20, at 1. The State of Maryland has authorized federal courts to certify unsettled questions of state law to its Supreme Court. *See* CJP § 12-603; Md. Rule 8-305. Under the Maryland Uniform Certification of Questions of Law Act, CJP § 12-601 et seq. (the "Certification Act"), the Supreme Court of Maryland may "answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State." CJP § 12-603. The purpose of the Certification Act is "to promote the widest possible use of the certification process in order to promote judicial economy and the proper application of [Maryland]'s law." *Proctor v. Wash. Metro. Area Transit Auth.*, 990 A.2d 1048, 1056 (Md. 2010) (alterations in original) (quoting Uniform Certification of Questions of Law Act § 3 cmt. (1995)). The decision of whether to certify a question to a state's highest court "rests in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).

Seventh-Day Defendants contend that the CVA "has no application to claims for child abuse that arise wholly outside the State of Maryland," and they rest their argument primarily on

"Maryland's general presumption against extraterritoriality."[13] ECF 20-1, at 5. In support of this argument, Seventh-Day Defendants do not cite to any case involving the CVA but instead analogize to two cases concerning the Maryland Wage Payment and Collection Law ("MWPCL") and Maryland Shield Law ("MSL"). *Id.* at 6–7. First, Seventh-Day Defendants cite *Poudel v. Mid Atlantic Professionals, Inc.*, Civ. No. TDC-21-1124, 2022 WL 345515 (D. Md. Feb. 4, 2022), *aff'd*, 115 F.4th 287 (4th Cir. 2024), in which Judge Chuang of this Court concluded that the MWPCL did not apply when an employee's work was conducted wholly outside of Maryland, even though the employer was Maryland-based and the contract contained a Maryland choice of law provision. ECF 20-1, at 5–6 (citing *Poudel*, 2022 WL 345515, at *1–4). Second, Defendants cite to *In re Interstate Subpoena for Thompson*, 309 A.3d 51 (Md. App. 2024), and assert that Maryland's intermediate appellate court "rejected an assertion of the [MSL]" by "a Maryland journalist who was seeking to avoid an interstate subpoena compelling her to testify in Texas, because the MSL had no extraterritorial application to the reporting work Thompson performed before moving to Maryland." ECF 20-1, at 7.

Seventh-Day Defendants also argue that the legislative history of the CVA indicates that the law was never intended to apply to claims arising from acts of sexual abuse that were perpetrated outside of Maryland. *Id.* at 9–10. Seventh-Day Defendants primarily point to legislative testimony that provided an overview of revival legislation similar to the CVA passed nationwide, *id.* at 9, and the fact that the legislature was concerned about the CVA's financial impact on the public and private sector, *id.* at 10–11, as well as its impact on the capacity of Maryland courts, *id.* at 10. This testimony and contemplation by the legislature, Seventh-Day

---

[13] This Court is not convinced that the presumption against extraterritoriality is the canon most applicable to this dispute. Nevertheless, the Court includes all of the parties' arguments here to provide fulsome context to the Supreme Court of Maryland.

Defendants argue, demonstrates legislative intent to confine the applicability of the CVA to claims arising out of sexual abuse that occurred in Maryland. *Id.* at 9–10.

Plaintiffs counter that "[n]otably absent from the statutory language are common territorial limiting phrases that would restrict application to in-state conduct." ECF 25-1, at 10. Plaintiffs assert that "[t]his case presents fundamentally different circumstances than *Poudel*" because, in contrast to *Poudel*, "Defendants here engaged in extensive Maryland-based conduct that directly caused Plaintiff[s'] injuries." *Id.* at 14. Plaintiffs argue that *Jones v. Prince George's County*, 835 A.2d 632 (Md. 2003), is more analogous to this case. *Id.* at 15. Specifically, Plaintiffs contend that in *Jones*, "[c]laims against Maryland entities based on tortious municipal policy and custom, negligent training, and negligent supervision occurring in Maryland were governed by Maryland law despite the injury manifesting in Virginia." *Id.* Plaintiffs argue that Maryland's substantive law should apply here, as it did in *Jones*, because Seventh-Day Defendants "engaged in systematic tortious conduct within Maryland that enabled and concealed abuse." *Id.* Moreover, Plaintiffs assert that public policy compels the application of the CVA to their claims, because "[e]xempting Maryland institutions from liability for abuse they enable at out-of-state facilities would eviscerate the CVA's protective purpose." ECF 25-1, at 18.

Although not raised by any party, the Court also notes that Plaintiffs' states of residence when the alleged abuse occurred may also be relevant to the applicability of the CVA to this case. An example of the significance of a plaintiff's residence to the applicability of statutes extending the statute of limitations in cases alleging sexual abuse is found in how courts have handled New York's Civ. Prac. L. & Rules ("CPLR") § 214-g, "the statute enacted as part of the New York Child Victims Act that revives time-barred causes of action brought by survivors of childhood sexual abuse." *S.H. v. Diocese of Brooklyn*, 205 A.D. 3d 180, 182 (2d Dept 2022). In *S.H.*, the

31

plaintiff, a Florida resident, brought suit in New York state court pursuant to § 214-g for sexual abuse that occurred in Florida. *Id.* The appellate court in New York held that the statute was "not available to *nonresident* plaintiffs where the alleged acts of abuse occurred outside New York." *Id.* (emphasis added). In contrast, New York courts have held that CPLR § 214-g does apply to claims arising out of sexual abuse that occurred outside of New York if the plaintiff was a New York resident at the time of the abuse. *See, e.g., Samuel W. v. United Synagogue of Conservative Judaism*, 219 A.D.3d 421, 422 (1st Dept 2023) (holding that the plaintiff's claims "were properly revived under CPLR 214-g" because "[e]ven though the alleged sexual abuse occurred outside of New York, plaintiff was a New York resident at the time the action accrued"); *Huebner v. Goodman*, 231 A.D.3d 931, 932 (2d Dept 2024) (holding that "CPLR 214-g applies even though the alleged sexual abuse occurred outside of New York" because "plaintiff alleged that he was a New York resident at the time the causes of action accrued"); *see also Sutton v. Tapscott*, 120 F.4th 1115, 1121 (2d Cir. 2024) (reversing the district court because, among other things, it erred in holding that CPLR § 214-g did not revive the plaintiff's claims based on the out-of-state sexual abuse of a New York resident child). It does not appear that the Supreme Court of Maryland has had occasion to decide a similar question with respect to the Maryland CVA.

Having reviewed the parties' briefing and arguments set forth therein, the Court is satisfied that "there is no controlling appellate decision, Constitutional provision or statute" of the State of Maryland that resolves the question of whether the CVA was intended to apply to claims arising from sexual abuse of non-resident children that occurred wholly outside of Maryland, but allegedly involved Maryland institutions—nor is there sufficient authority that would permit this Court to reasonably guess how the Supreme Court of Maryland might resolve that question.

"[W]hen a question of state law presents an issue of first impression, or if a possible interpretation might have the result of creating new law, a federal court must err on the side of restraint." *Enomoto v. Space Adventures, Ltd.,* 624 F. Supp. 2d 443, 457 (E.D. Va. 2009) (citation omitted). The Supreme Court of Maryland is best equipped to decide this question of statutory interpretation of Maryland law, especially given the significant impact that the answer could have on Maryland courts and the litigants who seek to avail themselves of the forum they provide. The Court is mindful that the parties have not requested that any question be certified to the Supreme Court of Maryland. Nevertheless, a decision to certify an issue to a state high court "rests in the sound discretion of the federal court," *see Lehman Bros.,* 416 U.S. at 390–91, and the Court is entitled to *sua sponte* certify a question. *See Elkins v. Moreno,* 435 U.S. 647, 662 (1978); *see also Mitchell Tracey v. First Am. Title Ins. Co.,* 950 F. Supp. 2d 807, 809 (D. Md. 2013) (adding a fourth certified question *sua sponte*).

Given the lack of governing state law, the Court intends to certify the following question to the Supreme Court of Maryland: "Does the Maryland Child Victims Act of 2023, Md. Code Ann., Cts. & Jud. Proc. § 5-117, apply to claims raised by a plaintiff who has never been a Maryland resident and where that plaintiff's claims arise from sexual abuse alleged to have occurred wholly outside of Maryland?" The Court will, however, provide the parties an opportunity to weigh in on the formulation of the certified question. Within fourteen (14) days of the issuance of this memorandum opinion and accompanying order, the parties may submit suggested revisions to the certified question in separate filings not to exceed five (5) pages. The parties may also submit a joint filing if they agree, also not to exceed five (5) pages.[14] The Supreme Court of Maryland's answer—if it elects to furnish one—will be "determinative of an issue in

---

[14] The suggested revisions should be filed in each Plaintiffs' individual case.

33

pending litigation." *See* CJP § 12-603. Given that certifying a question to the Supreme Court of Maryland and receiving an answer unquestionably takes time, the Court denies without prejudice the Seventh-Day Defendants' pending motions to dismiss in this and all related cases, to be re-filed after the resolution of the certified question.

## V.    CONCLUSION

For the foregoing reasons, Mountain View's motions to set aside default and motions to dismiss are granted. Seventh-Day Defendants' motions to dismiss are denied without prejudice to be re-filed after the resolution of the certified question. A separate implementing order will issue.

Dated: <u>July 31, 2026</u>

<u>/s/</u><br>
Brendan A. Hurson<br>
United States District Judge

34